### KING a. MORRIS.

*Supreme Court, First District; General Term, December,* 1855.

REAL ESTATE.—RE-SALE.

Under what circumstances, and upon what terms, a re-sale of real property sold at a judicial sale, will be ordered.

Appeal from an order of the special term, ordering a re-sale of real property which had been sold under foreclosure.

MITCHELL, J.—Peter Morris was formerly the owner of the property sold under foreclosure in this action, and executed the mortgage thereon to the plaintiff's testator. He afterwards sold the property to Mrs. Davis for $5,500—but he is the person alone liable for any deficiency, and as he is not the owner of the lands, he has some title to the same favorable consideration as a surety.

After the judgment the property was duly advertised for sale, and the sale was fairly conducted. The testimony of two witnesses is positive and clear that the three lots are worth $4,800 to $5,000, and this is made certain by the price paid to Morris by Mrs. Davis, and by the offer of Morris now to bid $4,950 for the property, and his positive affidavit that before the sale " he was ready with the necessary funds to purchase the same at a price not exceeding $4,950." Against this estimate there is no evidence except the affidavits of two parties

that they are satisfied that the lots sold for the price they did in consequence of their being sold for all cash; they do not say that they brought their full *cash* value. ✦

At the sale the three lots brought only $2,685 ; this is but little more than half their value, and leaves a deficiency of over $1,300 to be paid by Mr. Morris,—besides a great loss to be sustained by Mrs. Davis, the owner of the equity of redemption.

There can be no doubt that Mr. Morris had no knowledge when the day of sale was to be, and that he went, the day before it actually took place, to the former office of the plaintiff's agent to learn when it would be, and was there misled as to the place where the agent was ; and that again he was going on the following day to the proper office of the agent to make the same inquiries, when he found that he was too late, and that the sale was over. And there can be no doubt that he had prepared himself with the means to buy the property at $4,950, and was only prevented from doing so by his mistake or ignorance as to the time of sale.

It is said that a letter was sent by mail to Morris to notify him of the sale. It does not appear what the letter contained, nor on what day it was sent, nor that it was ever received. If received before the sale, it could not have informed Morris of the day of sale, as he swore positively that he went to the plaintiff's agent's office " to ascertain from him when the sale would take place," and again " to ascertain the day of sale." This would be untrue, if the letter had told him of the day of sale, and had been received. Morris had no opportunity of answering the allegation that the letter had been sent by mail, and to reply that he had not received it; but his affidavit shows that he could not have received it.

Mr. Puan also swears that he bid for the property until he was told by some one at the sale that there was rock on the lots, when he ceased bidding on that account; and that he has since ascertained that there was no rock on the lots.

Mrs. Davis and Mr. Morris petitioned for a re-sale, and it was ordered by the special term, on Mr. Morris stipulating to bid $4,950 at the sale, and repaying to the purchasers the amounts paid by them with interest, and also paying their costs

and counsel fees in examining the title.   The purchasers appeal from that decision.

Mere inadequacy of price is not a sufficient ground for a re-sale.   But such inadequacy of price as would amount to a fraud will authorize a re-sale; and great inadequacy with circumstances of excusable mistake will have the same effect.   No fraud can be imputed to the purchasers—but when the great inadequacy of price is made manifest, with the fact that it was brought about by a mistake of Mr. Morris as to the time when the sale would take place, and that he was prepared to bid, and would have bid $4,950 for the property rather than to allow it to sell for less, and that if the sale is not opened, he will be personally liable for a large deficiency; the purchasers would be doing a great wrong to him, if they were to enforce the sale, and the court may interfere to prevent this wrong.

This is not like the case of Lord *v.* Feishl.   That, as Judge Edwards' opinion shows, was a question between two persons, each claiming to be *purchasers* of the same property, not between the owner and purchasers—and he held there was neither irregularity, fraud, accident, surprise or mistake, within the meaning of the rules which have been laid down as to opening the biddings at a master's sale.

Here there was *accident*, the failure of the letter intended by the plaintiff's agent to notify Morris of the sale, to reach him,—and there was his *mistake* as to the time when the sale would take place, when he had prepared himself to bid for the property, and intended to bid for it, and supposed he was still in season to learn the true time of the sale; there was also a great inadequacy of price.   However inexpedient it may be to intermeddle with equity sales in ordinary cases, no harm can result, when so many circumstances concur, all appealing strongly to the favorable interposition of the Court—and when no fault or negligence is imputable to the owner, or to the person liable for the deficiency.

The order of the special term should be affirmed, without costs, with the modification that Mrs. Davis also pay the extra sum which she offered to pay.